Maginnis, C. J.
Defendant, Moore, is the post trader at Fort Washakie, in and upon the Shoshonee Indian Reservation. As such post trader, he resides upon said Indian reservation, and is engaged in merchandising. He is also the owner of some horses and cattle, which feed upon the reservation. The county commissioners of Fremont county, within whose geographical boundaries the reservation lies, *201 assessed Moore's property for taxation, and the tax so levied was paid by Moore under protest. He thereupon began an action in the court below to recover back the taxes so paid. The court below rendered a judgment in favor of Moore against the county commissioners, who are now seeking to reverse that judgment.
The Shoshonee Reservation was erected and created by a treaty between the United States and the Shoshonee Indians, ratified by the senate, February 16, 1869. Article second of this treaty provides: “And the United States now solemnly agrees that no person, except those herein designated and authorized so to do, and except such officers, agents, and employes of the government as may be authorized by law to enter upon Indian reservations in discharge of duties enjoined by law, shall ever be permitted to pass over, settle upon, or reside in this territory.” The act creating the territory of Wyoming was approved July 25, 1868, and provided a government for the section of country which comprised this reservation. There is no exception in this act as to the territorial jurisdiction of the territory over any of the country within the territory, except in so far as the language of section 1 of the act would be construed as a limitation: “Provided, that nothing in this act shall be construed to impair the rights of person or property now pertaining to the Indians in said territory, so long as such rights shall remain unextin-guished by treaty between the United States and such Indians.” There is nothing in the treaty with the Shoshonee Indians which withdraws from the scope of country covered by their reservation the jurisdiction of the territory. The provision in the organic act, therefore, can only operate as a limitation upon the jurisdiction of the territory; and this limitation, as the United States supreme ■court has said in Langford v. Monteith, 102 U. S. 145; Railway Co. v. Fisher, 116 U. S. 28, 6 Sup. Ct. Rep. 246, — does not extend to and prevent the process of the territorial courts from running upon such reservation. Counsel for the plaintiff very ably insists that the necessary corollary from this proposition is that the local authorities have the power to tax property upon such reservation not belonging to the Indians. While we are not prepared to admit this proposition, we do not think it necessary to pass upon it. Suffice it to .say that the jurisdiction to tax and the jurisdiction of the courts are not necessarily co-extensive. The policy of the government in its treatment of its Indian wards is well defined and generally understood. By reason of their nomadic habits, it has set apart for their use large tracts of wildland where game abounds, which largely furnishes them a livelihood. It also aims as far as possible to prevent communication between the red and white races. For these two reasons its treaties and laws are so framed as to prevent encroachment of the whites upon thereserva-tions of the Indians. In order to effectuate this purpose, troops are stationed upon these reservations; and as an incident to such occupation, and in order to avoid the necessity of communication with the whites, the government has made provision for these post traders. The same purpose forms the basis of the guaranty in the treaty with the Indians that only certain persons should enter upon the reservation. It seems to be well settled that “ the means or agencies provided or selected by the federal government, as necessary or convenient to the existence of its functions, cannot be subjected to the taxing power of the states;” and certainly the stock of goods of this post trader falls directly within this rule. Cooley, Tax’n, p. 85, says: “A state may tax the property of federal agencies with other property in the state, and as other property is taxed, when no law of congress forbids, and when the effect of the taxation will not be to defeat or hinder the operation of the national government.” Were the tax collector of Fremont county to be permitted to go upon such reservation, and destrain personal property there belonging to theposttrader, we think it would be a clear infraction of the policy of the government, as set forth in the treaty with the Indians. As far as the merchandise is concerned, it would be a clear interference with the purposes and operations of the government; and as to the cattle, we think the exercise of such jurisdiction would necessarily result in an infraction of the Sho-shonee treaty, and might result in the very difficulties which said treaty is meant to avoid. There is no such necessity existing to support the exercise of the taxing power as the supreme court invokes to support the civil and criminal jurisdiction of the courts.
The judgment of the court below must be affirmed.