## NOBLE, ET AL., v. AMORETTI, COUNTY TREAS-URER, ETC.

TAXATION—INDIANS—INDIAN RESERVATIONS—INDIAN TRADERS—POST TRADERS—DELINQUENT TAXES—DISTRESS FOR DELINQUENT TAXES—STATEMENT OF FACTS, ADMISSIONS IN—EVIDENCE—STATUTES.

1. A licensed Indian trader upon an Indian Reservation is not an officer or agent of the United States. (Moore v. Beason, 7 Wyo., 292, approved and followed.)

2. State taxation of the stock of goods of a licensed Indian trader located upon an Indian Reservation is not a tax upon an agency of the general government.

3. State taxation of the stock of goods of a licensed Indian trader located upon an Indian Reservation is not a tax· or burden upon commerce with an Indian tribe; and such taxation is not invalid as a regulation of commerce with Indian tribes.

4. Personal property, including the stock of goods, of a licensed Indian trader located within the limits of the Shoshone Indian Reservation, and employed in the business of such trader, is subject to taxation under the laws of the State in the same manner and to the same extent as all other like property within the county.

5. An admission in the agreed statement of facts, that plaintiffs' occupation as Indian traders could not have been carried on without "said stock of goods and improvements" which had been taxed by the county authorities, will not be held binding on the court as implying that the particular goods then in stock were necessary to such occupation, when the general knowledge and experience, and that of the court, is to the contrary; it being evident that other goods procured by the traders would answer their purposes as well.

6. The failure of the County Collector of taxes to make out, certify and file in the office of County Treasurer a list of delinquent taxes, as required by Sections 1871 and 1882, Revised Statutes of 1899, will not vitiate the taxes.

7. Delinquent taxes cannot be collected by distress, unless there be made out, certified and filed in the office of the County Treasurer, by the County Collector, a list of delinquent taxes in substantial compliance with Sections 1871 and 1882, Revised Statutes of 1899.

8. The provisions requiring, as authority for the collection of delinquent taxes, the making out, certifying and filing in the treasurer's office a list of all delinquent taxes, are not substantially complied with by a book, kept in such office, ruled into columns, the head of each showing the year, and to the left the names of persons, and opposite thereto, in the columns, figures showing amounts of money, all under the caption, "Statement of Delinquent Taxes, Fremont County, Wyoming, for the Following Years," and there being also columns for entries of collections, penalty and remarks; it appearing that none of the entries are certified, and no separate and complete list was made out in either year, nor any list certified to be a true list of all delinquent taxes.

[Decided March 19, 1903.]                    (71 Pac., 879.)

RESERVED questions from District Court, Fremont County, HON. CHARLES W. BRAMEL, Judge.

Action by Worden P. Noble and Albert D. Lane, co-partners doing business under the firm name of Noble & Lane, to enjoin the County Treasurer from selling certain personal property which had been seized and advertised for sale by said treasurer as collector of taxes for alleged unpaid and delinquent taxes. The case was submitted upon an agreed statement of facts, and thereupon reserved to the Supreme Court for its decision upon certain important and difficult questions. The reserved questions and other material facts are stated in the opinion.

*Clark & Breckons,* for plaintiff.

It is a fundamental principle of the law of taxation that the means or agencies provided or selected by the Federal Government as necessary or convenient to the exercise of its functions cannot be subjected to the taxing power of the

states, since, if they could be, a state dissatisfied therewith, or disposed for any reason to cripple or hamper the operations of the Federal Government, might tax them to an extent that would impair their usefulness, or even put them out of existence.    (Cooley on Taxation, p. 83.)

The plaintiffs trade with the Indians, by virtue of authority from the United States, and under the agreed statement of facts could not exercise their occupation by virtue of such authority without the use of the property taxed in this case. Give to the State the power to tax this property and the State might tax it in such a way as to prevent them from exercising their occupation.

Section 1782, Revised Statutes, refers to the original tax list, and provides what the certificate and warrant should contain.    The warrant requires the collector to collect the taxes therein levied according to law, and this original tax list is constituted full and sufficient authority for the collector to collect all taxes therein contained.

Section 1783 requires the collector, on receipt of the tax list, to proceed immediately to collect taxes therein levied; and he is further authorized to require and collect all taxes remaining unpaid on the lists of former years.

In neither of the foregoing sections is the collector given any authority to collect the taxes by distress and sale of personal property.

Section 1853 provides for the distress and sale of personal property about to be removed out of the county; the original tax list being the authority for the seizure of such property.

Section 1871 provides that the County Collector of taxes shall immediately after the 31st day of December in each year, from the list in his hands, make out a complete list of all delinquent taxes for that and preceding years due from every person or persons, corporation or corporations, or association of persons taxable in his county, "and shall attach his certificate to said statement or list, showing that it is a true list of all delinquent taxes, and file the same in the office of the County Treasurer, and said list or statement

shall be at all times a sufficient warrant and authority for the collector of taxes upon which to proceed and collect any and all delinquent taxes."

Section 1873 of the Revised Statutes provides that after the taxes become delinquent in any year, the collector of each county shall at once proceed to make demand for the taxes due, and in case of non-payment shall levy distress upon the real or personal estate of the delinquent as may be most convenient.

Section 1874 provides that in all cases where taxes due from any person or corporation may become delinquent, it shall be lawful, and it is made the duty of the officer whose duty it is to collect the delinquent taxes, to proceed and collect such delinquent taxes.

Section 1875 provides that in the collection of the delinquent taxes mentioned in Section 1874, "it shall be lawful for the officer whose duty it is or may be to collect the same, to make the same by distress and sale of the personal property of the party owing such tax, or liable for the same, notwithstanding such party may have real estate in the county where such tax is due, and the delinquent tax list alone shall be a sufficient warrant for such distress."

An inspection of the agreed statement of facts in this case discloses that no such delinquent tax list as is provided for by the sections above referred to was made up in the County of Fremont each year. Taxes remaining unpaid were entered in a book, the entries in the one book covering several years. To none of these was there ever attached a certificate of the proper officer showing what the list was. Indeed the agreed statement of facts shows that no list such as is required by law was kept, the sample page from the book set forth in the agreed statement of facts proving very clearly that the provisions of the law were not carried out.

Under this condition of affairs had the County Treasurer of Fremont County the right or authority to seize the property of the defendant?

To authorize a collector to distrain goods and chattels for

the satisfaction of a tax, the officer must have for the purpose such a warrant as is provided by law, and the law must give authority for the seizure. (Cooley on Taxation, p. 438.)

The warrant attached to the original tax list is the collector's authority for collecting the taxes, but does not give him any authority to seize the property.

Section 1853 makes this warrant attached to the original tax list sufficient authority for the seizure of certain kinds of property, that is, personal property about to be removed out of the county. This section does not, however, authorize the seizure of any other kind of property. Section 1873 authorizes distress and sale of property of the delinquent. Section 1875 authorizes the distress and sale of, personal property, providing in terms that the delinquent tax list shall be the authority of the collector. It must, therefore, be clear that the authority for the seizure of personal property for the non-payment of taxes comes alone from the delinquent tax list, and not from the original tax list. Nowhere in our statutes can the right to seize property by virtue of anytihng but the delinquent tax list be found.

The question then naturally arises as to whether the book in the possession of the defendant in this case was such a delinquent tax list as required by law, and whether it constituted proper process for the seizure of the property in this case. In the first place it contains no certificate; it lacks' authentication by the officer whose duty it is to certify to it. In the next place, there is no showing that it was ever filed in the proper office. In the third place, separate lists for each year were not kept, nor is there in the list any description of the property upon which the taxes have become delinquent. We believe that there can be but little doubt that this book did not constitute proper authority for the sale of the property of the defendants. It is a familiar rule that statutes giving the municipality the right to sell property for taxes without judicial process are strictly con-

strued, and that all of the proceedings be in strict com-
pliance with the law. ' (Cooley on Taxation, 442.)

A glance at the many authorities on some of the ques-
tions involved is instructive, and we will refer to a few of
them which we think throw some light upon the question
involved. (Port Huron v. Potts, 78 Mich., 437; Minor v.
McLean, Fed. Case No. 9360; Stambaugh v. Carlin, 35
O. St., 209; Thompson v. Burhans, 61 N. Y., 63; Hill v.
Mason, 38 Me., —; Skinner v. Brown, 17 O. St., 33; Har-
mon v. Stockwell, 9 O., 94; Kelley v. Craig, 5 Ired., 129;
Thatcher v. Howell, 6 Wheat., 118; Miller v. Otis, 74
Ill., 390; Martin v. Barbour, 34 Fed., 701; Huntington v.
Brantley, 33 Miss., 451; Wartensleben v. Haithcock, 80
Ala., 565; Tallman v. White, 2 N. Y., 70; Striker v. Kel-
ley, 2 Den., 323; Belden v. State, 46 Tex., 103; Fox. v.
Turtle, 55 Ill., 377; Pickett v. Hartsock, 13 Ill., 279; Mor-
gan v. Camp, 16 Ill., 176; Morrill v. Swartz, 39 Ill., 109;
Company v. Greely, 11 Minn., 322; Hough v. Hastings,
18 Ill., 312; Cotzhausen v. Kaehler, 42 Wis., 333; Simp-
son v. Edmiston, 23 W. Va., 675; Bank v. Hooper, 77
Ia., 435; 25 Ency. L., 334.)

Independent of any authorities, however, can it be
doubted for a moment that the seizure of the property of
the plaintiff in this case, under the circumstances set forth
in the agreed statement of facts, was illegal and unau-
thorized.

Under the agreed statement of facts, it appears that the
property was seized by the County Treasurer of Fremont
County for delinquent taxes for the years 1894 to 1899,
inclusive. As we have seen, under the law it is well set-
tled that to authorize such a seizure there must be statutory
authority for it, and the warrant authorizing it must be in
the form prescribed by law. The original tax lists were
undoubtedly in the hands of the officer who made the
seizure, but the only authority given to such officer by
virtue of these original tax lists was the authority to re-
ceive and collect the taxes, and no express authority is

given him to seize property by virtue thereof. He there-
fore could not have had autohrity by virtue of such orig-
inal tax lists, and his only authority would be by virtue of
a delinquent tax list.

As we have already endeavored to show, this delinquent
tax list was defective in several particulars, and certainly
could not be made the basis for the seizure of personal
property. How did the Treasurer of Fremont County for
the year 1900 know that the taxes for the years preceding
were deliqnuent? He could only tell by virtue of the de-
linquent tax list certified by the officer who made the same,
and there was no such delinquent tax list in his possession,
and there was not in his possession any certificate from
any officer showing that they were delinquent.

How did the County Treasurer who made the seizure
know on what property the taxes in question were de-
linquent? He could only tell by the delinquent tax list in
his possession, and the agreed statement of facts shows
that no such delinquent tax list, giving a description of the
property, was in his possession.

In presenting to the court our view of the illegality of
the seizure in question, we do not overlook the fact that,
under the laws of the State of Wyoming, taxes on per-
sonal property remain a perpetual lien thereon; nor do we
overlook the further fact that *perhaps* in the State of Wyo-
ming a suit may be brought for the collection of the de-
linquent taxes. But the question of the proper method of
foreclosing a tax lien on the personal property, and the
question of the delinquency of the tax, is not here involved.
The sole question to be decided by the court is as to the
legality of the seizure made by the defendant in this case.
The Constitution of the State provides that no person shall
be deprived of his property without due process of law;
and the law appears to be well settled that property may
not be summarily seized for the payment of a tax unless
the statute expressly authorizes it, and the provisions of
the statute be strictly complied with. Has there been due

process of law for the seizure of the property of the plaintiff is the question here, and not whether the tax is still a lien on the property, and not whether suit may be brought for the recovery of the tax. If the defendant in this action had no sufficient process authorizing him to seize the property; if he was not authorized to do so by virtue of the original tax lists in his hands; and if no delinquent tax list, such as is provided by law, was in his hands, then we submit that judgment should be for the plaintiff in the action, no matter what view the court may entertain as to any further right the county may have.

*W. E. Hardin* and *N. E. Corthell,* for defendant.

Is personal property located upon the Shoshone Indian Reservation, and used by the owner in his business as a licensed Indian trader, for sale to Indians and others, whether living on or off the reservation, subject to taxation by state authorities? It is submitted that this question never would have been a very formidable one if analyzed and separated into its constituent parts. It suggests three reasons for exemption from taxation, which may be expressed as follows:

1.   The *location* of the property on an Indian Reservation.

2.   The *ownership* of the property by a licensed Indian trader.

3.   The *use* of the property in a business conducted under government license.

Unless there resides in some one of these objections a valid reason for exemption from taxation, it would seem that a fusion of the three objections into one could not give them a greater effect.

As to the first proposition, the Shoshone Indian Reservation is territorially and politically within the limits of the State of Wyoming and the County of Fremont. Property situated within the reservation is also within the county and State, and, therefore, within the scope of the tax laws, if not otherwise exempt. In other words, its *location* does

not remove it from the taxing power. This proposition has been too frequently passed upon and too uniformly upheld to require further discussion.

As to the second proposition, we believe it is universally held to be true that no property is exempt by reason of its ownership alone, except the property of the United States, the State or some of its political subdivisions. Certainly in this case it would not be claimed that property located within the State of Wyoming, owned by the plaintiffs in this case, would, solely by reason of such ownership and apart from its location upon an Indian Reservation and the particular use to which it was put, be exempt from taxation. To illustrate: The plaintiffs own a large stock of merchandise and conduct an extensive business in the Town of Lander. It would not be contended that their property owned and used there would be exempt from taxation because of its ownership by a firm which, in another place, was engaged in the Indian trade. Its *ownership,* therefore, does not protect it from taxation.

Is the third objection of any greater force? If the property of the plaintiff is exempt from taxation by reason of the use for which it is intended, or to which it is put, then it surely follows that it is so exempt independently of any question of location or ownership. It would be as much exempt while in transit to the Indian agency, or while stored at Lander, or at any other place in the State, as when at its final destination. If the use or the intended use is the fact upon which the exemption is made to turn, it could not matter where the property was or by whom it was owned. On the other hand, if there were any distinctions between property kept for sale to Indians and property kept for sale to other persons, the fact that the plaintiffs use their property indiscriminately for both purposes would necessarily wipe out this distinction and destroy the exemption.

These considerations are not advanced as the strongest argument against the plaintiff's objections. The argument

could not be stated more strongly than in the opinions of this court and the opinions of the Supreme Court of the United States, there cited. (Moore v. Beason, 7 Wyo., 292; Torrey v. Baldwin, 3 Wyo., 430.)

It is well said by counsel for the plaintiffs, in their brief, that many disputed questions were set at rest in the Moore case. It is submitted that the liability of the plaintiff's property to the tax levied upon it in this case is one of those questions. While the property involved in the Moore case and in the Torrey case was not in use in the Indian trade, still every reason given by the court in its decision and most of the authorities cited are applicable with equal force to the property so used. The principles upon which these cases were decided clearly control the decision of this case. Further recent federal cases are entirely in line with the principles so laid down. (Truscott v. Hurlbut Land Co., 73 Fed., 65; Thomas v. Gay, 169 U. S., 273; Henderson Bridge Co. v. Henderson, 173 U. S., 592-621.)

The second objection advanced by the plaintiffs, assuming the validity of the tax in this case, relates to the power of the treasurer to collect the tax by distress of personal property without the delinquent tax list, separately certified by him, in addition to the tax list and warrant prescribed by law.

The several provisions of the statutes bearing directly upon this subject are set out, in their present form, in the plaintiff's brief.

It will be seen that Sections 1782, 1783, 1853, 1859 and 1870, in themselves, provide a complete, coherent, progressive and orderly system of procedure for the collection of all taxes which are contained in the tax list, even to the sale of property and other means of collection usually employed. If there were no other provisions in the statutes, the steps authorized and directed to be taken are here clearly and consecutively pointed out. Nor is this procedure in any wise altered or affected, nor is it claimed to be altered or affected as to the manner in which the taxes

shall be collected, the steps to be taken or the means to be employed, by reason of what appears elsewhere in the statutes.

But it is said that provision has been made for the making out, by the treasurer himself, from the tax list, of a separate list of delinquent taxes only, to be certified by him and filed in his own office, which list in itself is made "a sufficient warrant and authority (for him) upon which to proceed to collect any and all delinquent taxes" (Sec. 1871), and "to make the same by distress and sale of personal property of the party," etc. (Sec. 1875.)

Because of the existence of these provisions, it is argued that the power, which might otherwise exist under the tax list and warrant, to distrain property, is taken away and a new power conferred on the same officer to do the same acts by virtue of the delinquent tax list only, to be made out and certified to and delivered by himself to himself.

It is not out of place at the outset to ask what right of the taxpayer or the public is involved in this contention? What reason exists for the doing of this vain thing? Of what greater force is a partial list than a complete list of the taxes levied?

The suggestion underlying the argument of the plaintiffs seems to be that, after December 31st, the tax list and warrant proper have served their purpose and are of no further authority or force. If there is any reason why this should be so, it does not appear anywhere in the statutes themselves. The delinquent tax list is at most a mere transcript of a part of the original list. It cannot be of any higher authority than its original. As usually made out, it does not contain all of the particulars of the original, and it becomes necessary, for many purposes, afterward to resort to the original list, as for the apportionment of taxes collected, for the assessment of omitted property, for the correction of errors, etc. Delinquent taxes of former years are carried forward upon the general tax list, and the original lists of former years are especially made authority for

the collection of taxes remaining unpaid.   (R. S., 1781, 1783.)

It is not unreasonable to examine into the history of our Legislature for a more rational cause or object to explain the purpose of the delinquent tax list.  The provision for the making of a delinquent list has existed in some form from the beginning.  (Laws 1869, p. 356, Sec. 42; C. L. 1876, p. 560, Sec. 42; R. S. 1887, Sec. 3820; Laws 1895, p. 245, Sec. 5; R. S. 1899, Secs. 1871, 1882.)

Prior to 1882 the sheriff, and not the treasurer, was the collector of taxes, and was required to report his collections at frequent intervals and pay over the proceeds to the County Treasurer.   (C. L. 1876, pp. 211-213; Laws 1879, p. 75, Sec. 3.)

While this system prevailed, the enactment declaring the delinquent tax list "alone" to be a sufficient warrant for distress was enacted in its original form, which, without the change of a line or a syllable, has been carried forward to this date.   (Laws 1879, p. 50, Sec. 2; R. S. 1887, Sec. 3813; R. S. 1899, Sec. 1875.)   Meantime, in 1882, the system of the collection of taxes was materially changed by making the County Treasurer, instead of the Sheriff, the collector of taxes.   (Laws 1882, p. 110, Sec. 7.)

Thus it will be seen that a provision of much utility and necessity at the time it was enacted in 1879 has, by reason of the merger of the office of collector in that of County Treasurer, become a mere survival of a former regime, an unnecessary and futile form.

There are still other useless relics of the old order of things which have crept into our present statutes in some inexplicable way, and which are meaningless and obsolete.  (R. S., Secs. 1822, 1823, 1824.)

These instances merely illustrate the character of the statutory provisions which are invoked to destroy the natural and logical effect of a system of tax collection which is simple and complete in itself, and to saddle upon it a vain and needless repetition of unimportant acts, tend-

ing neither to public efficiency nor to private protection. Inconsistencies arising from revision or amendment, involving literal absurdities or impossibilities, will not outweigh the object in view in construing and enforcing statutes.   (Cal. L. & T. Co. v. Weis, 118 Cal., 489.)

This court has had the tax collecting scheme of the State under consideration before and has commented on the completeness and sufficiency of the power conferred by the tax list and warrant.  ·(*In re* Apportionment of Indebtedness Between Fremont and Big Horn Counties, 8 Wyo., 52.)

And the court has not been inclined to regard objections which do not go to the substantial authority and validity of the tax itself, and has sustained methods of collection which, to say the least, were not so clearly indicated by statute as the process of distraint.   In a case lately before the court, where no tax list was shown, a suit under city ordinance was upheld for the recovery of a tax shown by resolution of the City Council to have been levied.   Even the extension upon the tax list was not considered to be necessary to uphold the recovery.   (Albany M. B. Assn. v. City of Laramie, 10 Wyo., 54;  65 Pac., 1018.)

In considering the scope and effect of our tax collection laws, it is not to be overlooked that the taxpayer is not justified in waiting for the collector to act.   No demand is necessary.   The collector need not go after the money.   It is an affirmative duty laid upon the taxpayer to pay his taxes at the treasurer's office on or before December 31st. After that date all unpaid taxes are expressly declared to be delinquent without any other or further act.   (R. S., 1867.)

The glance which we are invited to take at the authorities cited by the plaintiffs does not seem in any degree to impair the strength of the considerations here urged.   The cases cited seem to fall within two general classes:   First, cases where a suit or some form of proceeding in court is pre-

scribed for the collection of personal taxes; second, cases involving the title to real estate sold for taxes, or summary proceedings taken for the sale of real estate. These cases are not only broadly distinguishable from the case of distraint of personal property under our laws, but are almost invariably influenced by special statutes or a general statutory policy requiring the tax collector to exhaust all other means, including in most states the destraint and sale of personal property, before resorting to the sale of lands or to suit. In this way some of the cases cited become authority for, rather than against, the procedure taken in the case at bar. In other cases the proceedings were required to be taken by some officer other than the one having the general tax warrant, as was formerly the case in this State, with respect to the sale of lands.

The citations evidently come, in the main, from Cooley on Taxation, 454-456, where they will be found cited in support of the proposition that "where a tax against lands is assessed to a resident and is a personal charge against him, the statutes, with almost unvarying uniformity, have made the personal property of the person taxed the primary fund for the satisfaction of the tax, and have given a remedy for enforcing payment from it. Until that remedy has been exhausted, no authority exists to go further." Further on in the same connection it is said that "under some tax laws the same officer who collects the taxes is empowered to make sale of the lands of delinquents, though in general that duty is confided to some superior. Where the same officer performs both duties, no return is required, though the filing of some official document showing the delinquency is sometimes provided." (Cooley on Taxation, 456.)

It will be seen by reference to the context that this whole discussion relates to the power to sell lands—truly an extraordinary one, and under most systems of taxation, only to be resorted to in extremity, and where all other means fail.

On the other hand, the method of collection by distraint of goods and chattels is one well established by custom and usage, and most commonly resorted to in. the first instance, where the tax is not voluntarily paid. (Cooley on Taxation, 438; 2 Desty on Taxation, 776-7.)

The power to use this means depends upon quite different principles and rules from those which cover proceedings for the sale of lands or which determine the validity of tax titles after such sale. (R. R. Co. v. State, 11 Ind. App., 433; In re Veith, 165 N. Y., 204.) ·

· It seems that a warrant attached to the general tax list, directing the collector "to collect the taxes therein mentioned according to law," imports authority to collect by any of the proceedings provided by law. (Reynolds v. Fisher, 43 Neb., 172; Grant v. Bartholomew, 57 Neb., 673.) And such direction is held to be authority to sell the lands. (Frazier v. Prince, 8 Okla., 253; Morrow v. Smith, 8 Okla., 267; Westhampton v. Searle, 127 Mass., 505.)

In Colorado, where the provisions of the statute appear to be substantially, if not identically, the same as ours, the general tax list seems to be the process under which distraint of personal property is made. (Hardesty v. Price, 3 Colo., 556; Haley v. Elliot, 20 Colo., 379.)

The same rule and practice seem to prevail in Indiana, and the proposition involved in this case has been directly decided there. (Adams v. Davis, 109 Ind., 10, 17; R. R. Co. v. State, 11 Ind. App., 433; see also McLean v. Meyers, 134 N. Y., 480; Wilson v. Cantnell, 40 S. C., 114.)

The delinquent tax list does not appear to be considered greater authority than the original list from which it comes. (State v. Saddler, 21 Nev., 13.)

And where there is a defect in the special warrant for the collection of non-resident taxes, it seems to be permissible to fall back on the general warrant for the collection of all taxes. (Benton v. Merrill, 68 N. H., 369.)

The tax involved in this case was in fact carried forward

into a book kept in the office of the County Treasurer especially for this purpose and containing a list of the delinquent taxes for several years, covering the entire period of these taxes. . It is not suggested that this list lacks any essential except the certificate of the County Treasurer, that it is a true list. It would be conceded, we presume, that the County Treasurer, being himself the collector, might lawfully add his certificate to that list and thus constitute it a sufficient authority in all respects for the seizure of personal property.

It has been expressly held that the omission of the prescribed affidavit, to the return of the delinquent tax list, does not affect the question of jurisdiction of a proceeding in court for the sale of lands. (Emmons County v. Lands of Bank, 9 N. D., 583; Com'rs. v. Morrison, 22 Minn., 178.)

Can it be true that the treasurer, possessing unquestioned power to create full authority in himself to take such proceeding, simply by endorsing his own certificate upon the delinquent tax list, must go through this useless ceremony before he can act? Is it a substantial safeguard for the protection of the taxpayer?

It is suggested in the plaintiff's brief that the treasurer cannot know what taxes are delinquent for previous years. Why not? He is the custodian of former tax lists. It is as much his duty to collect the taxes remaining unpaid on those lists as on the list of the current year. (R. S., Sec. 1783.) And the taxes delinquent from former years are carried forward in the rolls of succeeding years until paid. (R. S., Sec. 1781.)

And no authority or warrant can be created under the law except such as is included in and taken from the general tax list itself. The delinquent list is merely secondary authority in any case; the general list is the primary authority.

If the treasurer may distrain for the taxes of the present year, then he may justify under his process, even though he distrains for an excessive amount.. The recourse of the

taxpayer would be to recover the excess.   But if the taxes of former years are valid and justly due; he could not recover them from the treasurer merely upon the ground that the process was invalid.   He would be obliged to show that the money equitably belonged to him.   The process being valid for one year's tax, could not be enjoined without the payment or tender of that year's tax.

The further suggestion is made that the treasurer can know only from the delinquent tax list upon what property the tax is delinquent.   It does not matter.   He may levy upon any property, real or personal, of the taxpayer.   (R. S., Sec. 1873.)

Counsel confound the tax lien with the right to distrain, which is quite a different matter.   The lien is imposed merely to protect the tax claim from purchasers and others who may become interested in the property taxed.   The right to distrain does not arise from the lien, or depend upon it in any way.   The distraint may be upon property not taxed at all.

POTTER, JUSTICE.

From 1893 to 1899 the plaintiffs were licensed Indian traders, doing business within the Shoshone Indian Reservation in this State; said reservation being located within the boundaries of Fremont County.   They are the owners of improvements located upon land within the reservation, and a stock of goods, wares and merchandise also located on said reservation.   Such improvements and merchandise were owned and used by them in connection with their occupation or business as licensed traders with the Indians. It is agreed that their stock of goods was kept and employed in trade with the Indians and also with white people, residents on and off the reservation; and that without said stock of goods and improvements the business of plaintiffs as Indian traders could not have been carried on.

During each of the years mentioned the authorities of the County of Fremont assessed said improvements and stock of goods for taxation, and levied against the same certain

taxes. There is no contention that the property was assessed or the taxes levied, except in the same manner as all other property in the county of like character was taxed during the same period of time; nor is there any showing of discrimination in respect to this property.

On or about the 1st day of January, 1901, the County Treasurer, as tax collector, seized the stock of goods of the plaintiffs located on said reservation for the unpaid and delinquent taxes for the years named, and advertised the same for sale.

Thereupon plaintiffs instituted these proceedings to have the sale restrained. The cause was submitted to the District Court upon an agreed statement of facts; and that court reserved certain questions deemed to be important and difficult for the decision of this court. The tax collector for the several years in question had not made out and certified, and caused to be filed in the office of the County Treasurer a list of all delinquent taxes, as required by law, but an uncertified list was kept in a book in the office of the treasurer, who was also collector of taxes, ex-officio. The character of that book and the entries therein made will be more specifically referred to when we come to a consideration of the questions relating to the authority of the taxing officer to collect the taxes by distress of personal property. The reserved questions are as follows:

First—Under the laws of the State of Wyoming, is personal property located upon and within the limits of the Shoshone Indian Reservation in Fremont County, Wyoming, which personal property is used by the plaintiffs in their business and occupation as licensed Indian traders in the manner set forth in the agreed statement of facts in this case, subject to taxation in the County of Fremont, State of Wyoming?

Second—Are the plaintiffs exempt from taxation in the County of Fremont, State of Wyoming, by reason of their being licensed Indian traders in said reservation, engaged in the business of dealing with the Indians on that reserva-

tion, and also with white people living on and off said
reservation and those traveling through and across said
reservation, such as freighters and others?

Third—Does the failure of the County Collector and
Treasurer to certify delinquent tax lists, as provided by
Section 1882 of the Revised Statutes of 1900 of the laws
of the State of Wyoming, vitiate the taxes, or in any man-
ner prevent their collection or the enforcement of such col-
lection by him?

Fourth—In the State of Wyoming can personal property
be seized and sold after the 1st day of January for taxes due
for the preceding year by virtue of the tax list for such
preceding year, there being in the hands of the treasurer
and collector no delinquent tax list for such year?

Fifth—Did the tax collector for the County of Fremont
and State of Wyoming, under the facts set forth in the
agreed statement of facts, have the right or authority to
make distress and sale of the personal property of the plain-
tiff in this case?

Sixth—Did the book in which was kept an account of the
delinquent taxes due to the County of Fremont in the years
1893 to 1899, inclusive, constitute a sufficient delinquent
tax list, and was the same sufficient warrant for the distress
of personal property?

Questions 1 and 2 relate to the validity of the taxes in
question. The jurisdictional authority of the State to tax
property located upon the Shoshone Indian Reservation has
been before this court in several cases. The first case is that
of Moore v. Board of Commissioners of Sweetwater County,
2 Wyo., 8. In that case the taxing power of the State over
property on such reservation was denied. The same con-
clusion was reached in Fremont County v. Moore, 3 Wyo.,
200. In both cases not only was the right denied to tax the
merchandise of an Indian trader, but also the authority to
tax other property of the trader on the reservation not neces-
sarily connected with his business as such trader.

In the case first above cited the decision was based upon

the broad ground that the reservation was without the taxing jurisdiction of the territorial authorities.   And the court in the later case may be said to have been influenced by similar reasons; though it was held in that case that the distraint of personal property on the reservation by a tax collector would, as to the merchandise of the trader, amount to an infraction of the policy of the Government as set forth in its treaty with the Indians; and as to other property would result in an infraction of the treaty.   So far as concerns property other than goods and personal property of an Indian trader, the cases above mentioned were directly overruled by the decision of this court in the case of Torrey v. Baldwin, 3 Wyo., 430, wherein it was held that certain cattle owned by one not an Indian trader kept and located on the reservation was subject to state taxation; and the theory that the reservation was outside of the taxing jurisdiction of the State was shown to be unsound.   In the more recent case of Moore v. Beason, 7 Wyo., 292, we held that cattle and horses belonging to a licensed Indian trader, and kept and grazed upon the reservation with the consent of the Indians, who were paid for the privilege, were subject to state taxation.   The decisions of other courts are in harmony with our conclusions in Torrey v. Baldwin, and Moore v. Beason, and the power of the State to tax property within the limits of Indian reservations and belonging to persons not Indians is now well settled.   (Thomas v. Gay, 169 U. S., 364; Wagoner v. Evans, 170 U. S., 588; Truscott v. Hurlbut L. & C. Co., 73 Fed., 60; Gay v. Thomas (Okla.), 46 Pac., 578.)   The cases of Thomas v. Gay and Wagoner v. Evans, *supra,* involved the taxation of cattle kept within reservations in Oklahoma under leases with the Indians duly authorized by act of Congress; and the tax was upheld.   The court held that such tax did not constitute an invasion of the jurisdiction and control of the United States over the Indians and their lands; and it was said to be obvious that "a tax put upon cattle of the lessees is too remote and indirect to be deemed a tax upon the lands or privileges of the Indians."

In Moore v. Beason, *supra,* this court expressly refrained from deciding the precise question now presented, viz., whether the stock of goods of a licensed Indian trader, located on the reservation, would be subject to state taxation. It may be said also that in none of the cases above cited was that particular question under consideration. In 1862 the Supreme Court of Minnesota held that such property was not taxable under state laws. (Foster v. Board, 7 Minn., 140.) The ground of that decision was that the tax would interfere with and amount to a burden upon commerce with the Indian tribes, the regulation of which is vested by the Federal Constitution in Congress. In a recent case in Montana the contrary conclusion was announced. (Cosier v. McMillan, 22 Mont., 484.) That case was decided after the decisions were rendered by the United States Supreme Court in Thomas v. Gay and Wagoner v. Evans, *supra,* and these cases are cited in the opinion of the Montana court. It was held by that court that the tax did not amount to a tax upon any federal agency or means employed by the Government for the execution of its powers. In the opinion of this court in Moore v. Beason, *supra,* the character of the duties and privileges of a licensed Indian trader and his relations to the government are discussed; and it is unnecessary here to repeat what was there said. We adhere to the view then expressed, that such a person does not occupy the position of an officer or agent of the United States. He is permitted to reside in the Indian country and to carry on with the Indians any trade not prohibited. The goods handled by him are his own, and he may sell them to persons not Indians, as it is agreed in the case at bar plaintiffs do, and may doubtless remove them at pleasure, so far as any duty he owes to the Government or the Indians is concerned. We perceive nothing in the statutory regulations which would prevent him from abandoning his business at any time, and withdrawing with his merchandise from the reservation. In the case of the reservation in question, whether the fact is material or not,

the traders are in competition with other merchants in towns and places off the reservation in their dealings with people other than Indians.   There should be some good reason, therefore, if they are to be exempted from bearing their share of the burdens of the government in the shape of taxation.   We do not think that the taxation of the goods of the Indian trader is a tax upon an agency of the General Government in the sense in which such a tax is prohibited. We are unable to perceive how the tax operates to hinder or defeat the operations of the Government.   Should it be conceded, however, that the trader stands in the relation of an agent to the Government, we would not be inclined to regard a tax upon his property as having the necessary effect to deprive him of the efficient exercise of his power to serve the Government as it is intended he shall serve it; having in mind the nature and extent of his privileges and the purpose of the license under which he carries on his business.   (R. R. Co. v. Peniston, 16 Wall., 8.)

In McCullough v. Maryland, 4 Wheat., 316, Chief Justice Marshall, in the course of his opinion, referred to the supposed case of a contractor for supplying a military post with provisions; and after indicating that such contractor could not be fined or taxed for making purchases in a state or transporting the provisions to the place where the troops were stationed, said: "It is true the property of the contractor may be taxed." And the distinction has frequently been made in the decisions of the Supreme Court of the United States between a tax upon the property of an agent of the Government, and a tax upon the action of the agent, and it is held that a tax upon his property is not beyond the power of a state to impose. (R. R. Co. v. Peniston, *supra.*)

Although counsel for plaintiffs do not seem to assail the validity of the taxes in question upon the ground that they amount to a regulation of commerce with Indian tribes, that question is deserving of some attention, especially as the early case of Foster v. Board, *supra,* was decided on that ground by the Minnesota court.

We do not understand that a trader under a license from the governmental authorities owes any duty to the Government other than to observe and comply with the terms of his license, and the laws and regulations of the Government respecting trade and intercourse with the Indians. Such a license is expressly authorized to be revoked at any time; and whenever, in the opinion of the President, public interest may require the same, the introduction of goods into the country belonging to any Indian tribe may be prohibited, and he may direct all licenses to be revoked, and all applications therefor to be rejected. The effect of the license is to permit and authorize the licensee to reside in the designated Indian country and trade with the Indians. His right to do so cannot be interfered with by the state. But is that right interfered with by a tax upon his property that is laid equally upon all property of like kind? While it is true that a tax upon any article that may become the subject of commerce in a sense affects commerce itself, that fact does not determine that the tax is upon commerce. Although the effect of the tax may be an increase of the expenses of the trader, we think it cannot, for that reason, be justly said that the tax amounts to a regulation of commerce. (State Tax on Ry. Gross Receipts, 15 Wall., 284, 294; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S., 16.) It is admitted in the agreed statement that the occupation of plaintiffs as Indian traders could not have been carried on without "said stock of goods and improvements." Yet it is apparent that it could not have been intended that such admission should have the far-reaching effect that the strict language used might imply. But, if so, the admission should not be held to bind the court when its knowledge, and the knowledge and experience of everyone, must be to the contrary. It is evident that other goods procured by the traders would answer their purposes as well as the particular goods in stock at the time the tax was levied. Indeed, it is doubtless true that the goods in stock at the time of the attempted distraint were not the identical goods

on hand at the time of the assessment several years earlier. We take it that the admission was intended and understood to state that to pursue their occupation they required such a stock of goods. It is manifest that to trade with the Indians, they must have goods to sell. To buy from the Indians, they must have capital to be. so employed. Yet how would a tax upon such capital constitute a tax upon a regulation of commerce with the Indians?

It appears to us that the reasoning in the case of Thomas v. Gay, *supra,* is applicable to and largely decisive of this question. Answering the argument that the Indians were directly interested in the property sought to be taxed, for the reason that they received compensation from the own-ers of the cattle for the privilege of grazing them on the reservation, it was. said that the tax was too remote and indirect to be deemed a tax on the lands or privileges of the Indians. The tax in that case was also attacked on the ground that it conflicted with the power of Congress to regulate commerce with the Indian tribes; that it placed a servitude upon a lawful intercourse with the Indians over which Congress has absolute control. The court, however, said: "The unlimited power of Congress to deal with the Indians, their property and commercial transactions, so long as they keep up their tribal organizations, may be conceded; but it is not perceived that local taxation, by a state or ter-ritory, of property of others than Indians would be an in-terference with Congressional power." It was further said by the court that "the taxes in question were not imposed on the business of grazing, or on the rent received by the Indians, but on the cattle as property of the lessees, and, as we have heretofore said that as such a tax is too remote and indirect to be deemed a. tax or burden on interstate commerce, so it is too remote and indirect to be regarded as an interference with the legislative power of Congress." This holding of the learned court applies with full force, it seems to us, to the case in hand. The tax upon the stock of goods of the trader .is too remote and. indirect to be

deemed a tax or burden upon commerce with an Indian tribe. Indeed, the contention that the power of Congress was *interfered* with in the case of the taxation of cattle kept on the reservation by the consent and to the benefit of the Indians, with the approval of Congress, presented a stronger ground for invoking the constitutional provision as to the exclusive right of Congress to regulate commerce with the Indian tribes, than is presented by the facts in the case at bar.

The remaining questions have reference to the power of the collector, upon the facts in this case, to enforce the taxes by distress and sale of personal property. The general question involved is whether, in the absence of a delinquent tax list made out, certified and filed as required by the statutes, the collector is authorized to resort to the summary remedy of distress. It is conceded that the absence of such list does not vitiate the taxes. But it is insisted that in such case no authority is possessed by the officer to collect by means of distress.

The taxes in question were all delinquent. Prior to 1895 taxes became delinquent on the 30th day of November. By legislative enactment of that year the 31st day of December was fixed as the date whereon the unpaid taxes for the year should become delinquent. (L. 1895, Ch. 107, Sec. 4.) That provision has been carried into the late revision and is known as Section 1870. Section 3820, Revised Statutes of 1887, was as follows: "Immediately after the 30th day of November of each year the County Collector shall from the tax list in his hands make out a complete list of all delinquent taxes for that and preceding years due from every person or persons; attach his certificate to said statement, showing what the same is, and file the same in the office of the County Treasurer, which said statement shall be at all times a sufficient warrant and authority for the collector of taxes upon which to proceed to collect any and all delinquent taxes." In the revision of 1899 that section is known as Section 1882, and is identical with the section as it stood in

the former revision, with the exception of the time for preparing the list. That has been changed to correspond with the change made in the statutes in respect to the date when unpaid taxes become delinquent; so that for the 30th day of November has been substituted the 31st day of December.

In view of the argument of counsel for defendant that the treasurer being ex-officio collector, the provision is a useless one, requiring the officer to make out, certify and file in his own office, a certain statement, to operate as authority to himself to proceed to collect delinquent taxes that are already shown on the tax lists in his possession to be delinquent; it is significant that in 1895 the Legislature, in enacting a statute relating to delinquent taxes, again provided for such list in language very similar to that of the statute then in force. We have, therefore, two different sections of the statute making practically the same provision. The section of the act of 1895 referred to is now Section 1871 of the revision of 1899, and reads as follows: "Immediately after the 31st day of December in each year the County Collector of taxes shall from the tax list in his hands make out a complete list of all delinquent taxes for that and preceding years due from every person or persons, corporation or corporations, or association of persons taxable in this (his) county, and shall attach his certificate to said statement or list showing that it is a true list of all delinquent taxes and file the same in the office of the County Treasurer, and said list or statement shall be at all times a sufficient warrant and authority for the collector of taxes upon which to proceed and collect any and all delinquent taxes."

There is also another section that refers to this list, Revised Statutes 1887, Section 3813, Revised Statutes 1899, Section 1875. That section was enacted in 1879 in connection with the preceding section that made provision for collecting delinquent taxes, and it authorizes the collector to make the taxes by distress and sale of personal property, and provides that "the delinquent tax list alone shall be a

sufficient warrant for such distress." It is true that the collector is given general authority and is required to collect, as far as practicable, the taxes remaining unpaid on the original lists of former years, as well as those entered on the list of the current year. (R. S. 1899, Sec. 1783; R. S. 1887, Sec. 3808.) After the tax list of any year is delivered by the County Clerk to the collector, it thereafter remains continually in the latter's possession, and he notes thereon from time to time the payments made of the taxes therein charged. Assuming that all payments have been entered, he is able at any time to make out from such lists a statement or list of taxes that have become delinquent. It is also true that provision is made in one section of the statute for collection of taxes after they become delinquent in any year by distress and sale of property, without referring specifically to a delinquent list. (R. S. 1899, Sec. 1873; R. S. 1887, Sec. 3811.) That provision was incorporated into our laws in 1882 by the same act which made the treasurer ex-officio collector of all taxes, instead of the sheriff, who theretofore had performed those duties, before they became delinquent. The duty of collecting delinquent taxes had been imposed upon the treasurer before the passage of the act of 1882.

The act of 1882, however, left unrepealed a provision for the returning by the collector of a list of all unpaid taxes, after they had become delinquent. (C. L. 1876, Sec. 42.) And a provision for the publication of the delinquent list passed in 1877 was also unaffected by that act. (L. 1877, p. 93; R. S. 1887, Sec. 1815.) The act of 1877 requiring publication was not altered until 1891, when the section was so amended as to require the treasurer to make and place with the County Clerk, for general inspection, a full list of all delinquent taxes. That provision has continued in force. (R. S. 1899, Sec. 1101.) The provision of the act of 1879 declaring the delinquent list alone to be a sufficient warrant for distress was not touched by the act of 1882. It is, therefore, difficult to

disassociate the authority conferred upon the collector by that act from the other statutory provisions bearing on the subject. And the difficulty is rendered the more apparent in view of the fact that the provision is found in an act fixing the fees of county officers; and the section itself that empowered the collector to levy distress and sell proceeded to fix the fees chargeable for such service.

It is also true that in certain cases, such as the threatened removal of personal property from the county, the collector is authorized, under another section of the statute to levy upon and detain the property for a tax due or about to become due; but those provisions do not, in our opinion throw much light upon the question before us; nor do we think that the statute declaring that the tax on personal property shall be and remain a perpetual lien thereon until the payment of the tax should affect a decision of the question. The only remedy provided by statute for the enforcement of such lien seems to be the proceedings authorized for the collection of the tax.

In support of the right of distress without the delinquent list, it is argued that, independent of the provisions for the making of such list, and disregarding them, enough would remain in the statute conferring authority upon the officer to collect delinquent taxes by distress; and that no useful purpose is subserved by the list, since the collector is authorized by the express language of the statute to collect all unpaid taxes on lists of former years. It might be conceded, and doubtless should be, that if every provision requiring, or referring to, a delinquent list were stricken from the statutes, we would be able to discover in what remained adequate authority for the enforcement of the taxes in the manner attempted by the collector in the case of these taxes. But it is not perceived that the court is authorized to strike such provisions from the statute, or disregard them. Whether the delinquent list is of any practical value or not, the Legislature has deemed it wise to require it; and has so required by positive enactment as late

as 1895, many years after having imposed the duties of collector of taxes upon the County Treasurer.

Moreover, we are far from being convinced that the delinquent list is, so far as the taxpayer is concerned, a useless thing. It is true that, should payments be correctly entered upon the original lists, a reference to such lists would disclose the taxes unpaid and delinquent. But that record is negative, rather than positive. A list made out of all delinquent taxes, and certified to by the collecting officer, is positive official evidence of the facts set forth in the statement or list. Taxes upon the same property, or assessed against the same person, may be delinquent for a number of years. So far as the original lists are concerned, the record of that delinquency rests solely upon the fact that the taxes are not noted on the lists as having been paid. It seems not an unwarranted assumption that one purpose, at least, of the provisions under consideration was that there should be placed on file a positive record showing all delinquent taxes. The collector is required to certify that the list made out by him is a true one. Moreover, for some time, the list was required to be published, and since 1891 such a list is required to be placed with the clerk for public inspection.

But the controlling consideration is that the statutes expressly declare generally that the delinquent list shall be the authority for the collection of delinquent taxes, and in one place for making distress. Notwithstanding that the officer is authorized by statute in one section to collect the taxes remaining unpaid on the original tax lists of former years, that authority must be construed in connection with the other provisions of the statutes relating to delinquent taxes.

It is admitted that no delinquent tax list was made out for the years in question, 1893 to 1899, inclusive. But it appears that there was kept in the treasurer's office a book, ruled into columns, the head of each column showing the year, and to the left of the column the names of persons,

and, in the columns opposite the names, figures showing amounts of money. At the top is the following: "Statement of Delinquent Taxes, Fremont County, Wyoming, for the following years." The entries in the book are so made as to show opposite the name of Noble and Lane, for instance, in separate columns, the amount of delinquent tax for each year, the year being noted at the head of the column. There were also columns for entries showing the total tax collected, the penalty and remarks, and date of payment. The entries in the book were not certified. The book was kept as a record of delinquent taxes; but no separate and complete list was made out in either year, nor was any list certified to be a true list of all delinquent taxes. It is evident that each collector, at the end of the year, entered in the book the delinquent taxes for that year, but did not certify the same; nor did he include in any entry made by him delinquencies of former years. Those already appeared in the book. The evidence that they did or did not continue delinquent is to be found only in the notations of payment, or in the omission of any such entries. In our judgment, this does not amount to a compliance with the statute as to the making of a delinquent list, which is constituted authority to the officer to collect delinquent taxes by distress. We think that to authorize distress for delinquent taxes there must be made out and filed with the treasurer a certified list of all delinquent taxes. It does not appear from the statement of facts in this case, except inferentially, perhaps, whether or not the collector had such a list as the law requires made out and filed in any year subsequent to 1899. It is stated that in each of the years mentioned, *except the year 1900*, the book aforesaid was the only record kept by the County Treasurer showing the delinquent taxes, other than the original lists. But the situation as to the year 1900 is not disclosed. We do not think the question is before us whether a list properly prepared, certified and filed after the 31st day of December, 1900, or any subsequent year, showing delinquent taxes for

all preceding years would operate as a sufficient authority for the enforcement of such taxes by distress. We refrain, therefore, from deciding whether, in case of a failure of the collector at the end of any particular year to make, certify and file a delinquent list, such a list in a subsequent year including delinquent taxes · for all preceding years will authorize distress in enforcing collection of all such taxes; and whether a list now made up as required by law will confer such authority. We need go no further at this time than to say generally that to authorize distress there must be on file in the treasurer's office a list substantially as required by Sections 1871 and 1882. It is clear, we think, that the failure to make the delinquent list will not vitiate the taxes. Our decision upon the reserved questions, therefore, having reference to them by number, is as follows:

First—Personal property located within the limits of the Shoshone Indian Reservation, in Fremont County, used by the plaintiffs in their business as licensed Indian traders, in the manner set forth in the agreed statement of facts, is subject to taxation under the laws of the State in the same manner and to the same extent as all other like property within the boundaries of said county.

Second—The property of plaintiffs is not by reason of their being licensed Indian traders exempt from taxation in the County of Fremont.

Third—The failure of the collector to certify delinquent taxes does not vitiate the taxes. But such taxes cannot be collected by distress unless there be made out, certified and filed in the office of the treasurer, in substantial compliance with the law, a list of delinquent taxes, including the taxes sought to be collected. As already stated, in substance, in answering this question, we refrain from deciding whether or not, in case of neglect to make and file a list for the year in which any particular tax was levied and became delinquent, authority will exist for the collection thereof by distress by virtue of a list in substantial compliance with

the law, subsequently prepared and filed, embracing such delinquent tax.

Fourth—For the purposes of this case, the above sufficiently answers the inquiry contained in the fourth question.

Fifth—Under the facts set forth in the agreed statement, the collector was without right or authority to make distress and sale of the personal property of the plaintiffs at the time the same was attempted.

Sixth—The book kept in the treasurer's office, which purports to give an account of delinquent taxes for the years 1893 to 1899, inclusive, was not a substantial compliance with the statutes as to the delinquent tax list to be filed in the office of the treasurer, and was, therefore, not a sufficient authority for the distress of personal property in enforcing the collection of delinquent taxes.

Corn, C. J., and Knight, J., concur.