## HAYNIE *v*. SURPLUS TRADING COMPANY.

### Opinion delivered June 27, 1927.

1. TAXATION—PERSONAL PROPERTY ON MILITARY RESERVATION.—Personal property privately owned within Camp Pike Military Reservation in Pulaski County, *held* not exempt from taxation by that county under Acts 1903, p. 346, §§ 1, 2, under which the reservation was acquired by the United States.

2. TAXATION—PERSONAL PROPERTY OMITTED TROM TAX ROLL.—Personal property not placed on the tax roll was properly valued by the assessor under Crawford & Moses' Dig. § 9910, when notified of the omission, without the assistance of a township board, under Acts 1919, p. 132.

3.   TAXATION—LISTING OF PROPERTY ERRONEOUSLY OMITTED FROM TAX
     ROLL.—Crawford & Moses' Dig. § 9910, relating to the manner
     of listing property erroneously left off the tax roll, *held* not
     repealed by Acts 1919, p. 348, creating boards of equalization in
     all counties.

4.   TAXATION—ACTION TO RECOVER PERSONAL PROPERTY TAXES.—In a
     suit to collect taxes on privately owned personal property located
     within a military reservation and erroneously omitted from the
     tax roll and valued by the assessor under Crawford & Moses'
     Dig. § 9910, the taxpayer, having failed to pursue the statutory
     remedy, *held* not entitled to complain of overvaluation.

5.   TAXATION—STATE PROPERTY.—Where surplus personal property
     within the Camp Pike Military Reservation was sold by the
     United States to an honorary commission appointed by the Gov-
     ernor for the benefit of the Arkansas National Guard, and where
     such commission appointed a particular trading company to sell
     the property, under contract entitling it to one-half of the
     profits as compensation for its services, and for advancement of
     the purchase price, *held* that the property so sold was not tax-
     able as property of the trading company.

Appeal from Pulaski Chancery Court; *John E. Mar-
tineau*, Chancellor; reversed in part.

STATEMENT BY THE COURT.

This suit was brought by the sheriff and collector
of Pulaski County, Arkansas, against the Surplus Trad-
ing Company to recover certain taxes for the years 1922
and 1923, which the complaint alleges were due by it upon
personal property situated in Pulaski County, Arkansas,
which it had failed to assess for the years 1922 and 1923,
and which the assessor had assessed as property erro-
neously left off the tax-rolls and to which he had attached
the statutory penalty.

The facts necessary to determine the issues raised
by the appeal may be briefly stated as follows:

The Surplus Trading Company is a partnership
composed of various firms, corporations and individuals.
It was organized for the purpose of dealing in military
supplies of various kinds owned by the United States
and left over after the World War. On April 21, 1922,
the Surplus Trading Company paid the United States

the sum of $138,492.65 for 87,143 blankets situated on the Camp Pike Military Reservation in Pulaski County, Arkansas. It subsequently sold these blankets for a profit to various firms in the State of Arkansas and in other states. It failed to assess its property for taxation for the years 1922 and 1923, and the assessor of Pulaski County duly assessed the property of said firm at an amount which he had been informed was the value of the property owned by said firm and situated in Pulaski County during the time for assessing said property in said years. The Governor of the State of Arkansas appointed an honorary commission to handle and sell property belonging to the United States situated in said Camp Pike Military Reservation. This property was sold at a reduced price by the United States to said honorary commission for the benefit of the Arkansas National Guard. The honorary commission employed the Surplus Trading Company to handle and sell said property for it. The Surplus Trading Company, as part of the consideration for its employment, agreed to advance the purchase price of said personal property upon the condition that it should be repaid from the sales of said property.

Such other facts will be stated or referred to in the opinion as may be necessary for a determination of the issues raised by the appeal.

The chancellor found the issues in favor of the defendant, and it was decreed that the complaint should be dismissed for want of equity. The case is here on appeal.

*H. W. Applegate,* Attorney General, and *Sam T. & Tom Poe,* for appellant.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

HART, C. J., (after stating the facts).

The Camp Pike Military Reservation lies within the boundaries of Pulaski County, Arkansas, and the principal question presented for decision by this appeal relates to the power of the State and its subordinate tax-

ing agencies to levy and collect taxes pursuant to the State laws upon personal property situated within said military reservation.

Counsel for appellee seek to uphold the decree of the chancellor denying the right of the State and its subordinate agencies to levy and collect such taxes upon the authority of *Concessions Co.* v. *Morris* (Wash.), 186 Pac. 655. In that case it was held that the Camp Lewis Military Reservation, which was donated by Pierce County to the United States by consent of the State Legislature, excepting only the right to serve criminal and civil process therein, from the exclusive control of Congress, is without the State in both a jurisdictional and territorial sense, and personal property located thereon is not taxable under the State laws.

We do not agree with the reasoning of the court in that case, and are of the opinion that it is contrary to the trend of the decision of the United States Supreme Court bearing on the question as well as to the weight of authority in the State courts. The true rule governing cases of this sort is stated by the Virginia Supreme Court of Appeals in *Nikis* v. *Virginia,* 131 S. E. 236, 46 A. L. R. 219. In that case the court held to be subject to a State license tax a mercantile business carried on in a railroad station situated on land ceded to the Federal Government for an approach to an interstate bridge. It was there recognized that the State could not tax land or buildings situated thereon which had been ceded by the State to the United States, but it was expressly held that personal property situated in buildings upon said land owned by third parties was liable to be taxed by the State and county in which it should be found. In discussing the question the court said:

"That the right of a State to tax the property of others located upon lands owned by the United States, although it cannot tax such lands, will not be held to be abandoned by the State except for the most compelling reasons, is quite manifest from several decisions of the Supreme Court of the United States."

In that case the General Assembly of Virginia ceded the land to the United States for abutments and approaches of a proposed bridge across the Potomac River. The State retained concurrent jurisdiction with the United States over such lands for the execution of legal process and the discharge of such other legal functions within the same as may not be incompatible with the consent given in the act. The act also provides that the land acquired and the abutments and approaches of the bridge should be exempt from taxation by the State and county in which they were situated.

The Camp Pike Military Reservation was acquired by the United States under the provisions of an act of the Legislature of 1903. Acts of 1903, page 346. Section 1 of the act provides that the State of Arkansas consents to the purchase to be made by the United States of any site or ground for the erection of any armory or arsenal, etc., and that the jurisdiction of the State within and over all grounds thus purchased by the United States is ceded to the United States. The section provides that the grant of jurisdiction shall not prevent execution of any process of the State, civil or criminal, upon any person who may be upon said premises. Section 2 provides that the State releases her right to tax any such site, grounds or real estate and all improvements which may be thereon and thereafter erected thereon, during the time the United States shall be and remain the owner thereof.

Thus it will be seen that, by the terms of the act itself, it was not intended by the State to part with jurisdiction for the purpose of listing personal property of third persons in the reservation for assessment and taxation. The grant by the State expressly cedes its right to tax the land and buildings granted to the United States, and this of itself indicates an intention to reserve jurisdiction for taxation over the property of third persons located on such reservation. The United States accepted the grant upon the terms indicated and, by its acceptance, acknowledged that there was no occasion for the State

to cede exclusive jurisdiction to the United States or to exempt from State taxation the property of third persons situated upon the reservation, which was not used by the United States as a public agency or instrumentality for carrying out the purpose of the grant.

In *Noble* v. *Amoretti,* 11 Wyo. 230, 71 P. 879, it was held that State taxation of the stock of goods of a licensed Indian trader located upon an Indian Reservation is not a tax upon an agency of the general Government and is not a burden upon commerce with an Indian tribe. It was further held that personal property, including the stock of goods of a licensed Indian trader, located within the limits of the Shoshone Indian Reservation, and employed in the business of such trader, is subject to taxation under the laws of the State in the same manner and to the same extent as all other like property within the county.

In *Oscar Daniels Co.* v. *Sault Ste. Marie,* 175 N. W. 160, 208 Mich. 363, the Supreme Court of Michigan held that a statute of that State ceding all right and title of the State of Michigan to a canal and public works thereon to the United States, and retaining jurisdiction for the service of civil and criminal process, cedes less than exclusive jurisdiction, and the ceded territory is not out of the State, in so far as taxation of private property is concerned. We think this holding is in accord with our own decisions and the trend of the decisions of the Supreme Court of the United States bearing on the question.

In *Ex parte Gaines,* 56 Ark. 227, 19 S. W. 602, it was held that the estate of the lessee of land belonging to the United States situated on the Hot Springs Reservation was not exempt from taxation. The court said that the interest of the lessee in the land was not the property of the United States and was not a means employed by Government to obtain a governmental end. It is true that, in that case, the decision was also based upon an act of Congress giving the consent of the United States to the taxation of personal property under the laws of the

State of Arkansas on the Hot Springs Reservation. It will be noted, however, that the trend of reasoning in that case is in accord with the reasoning in the Virginia and Wyoming cases above cited.

In *Cassels* v. *Wilder*, 23 How. 61, it was held that property on a United States military reservation is subject to taxation by a Territory. In *Thomas* v. *Gay*, 169 U. S. 264, 18 S. Ct. 340, 42 L. ed. 740, it was held that an act of the Legislature of Oklahoma Territory providing for the taxation of personal property of persons other than Indians was a legitimate exercise of the Territory's power of taxation, and, when enforced in the taxation of cattle belonging to persons not resident in the Territory, grazing upon Indian reservations therein, does not violate the Constitution of the United States. In *Wagoner* v. *Evans*, 170 U. S. 588, 18 S. Ct. 730, 42 L. Ed. 1154, in *Foster* v. *Pryor*, 189 U. S. 325, 23 S. Ct. 549, 47 L. Ed. 835, and in *Catholic Missions* v. *Missoula County*, 200 U. S. 118, 26 S. Ct. 197, 50 L. Ed. 398, this decision was approved and followed. To the same effect, see *Rice* v. *Hammond*, 19 Okla. 419, 14 Ann. Cas. 963, 91 P. 698; *County of Cherry* v. *Thacher*, 32 Neb. 350, 49 N. W. 351, and *Cosier* v. *McMillan*, 22 Montana, 484, 56 Pac. 965.

The doctrine of these cases sustains, we think, the authority of Pulaski County to tax the personal property of third persons situated on the Camp Pike Military Reservation, where the property is not used as a governmental agency, and where it would be otherwise subject to taxation under the laws of the State.

It is also claimed by counsel for appellee that the tax cannot be collected because the assessment was not made in the manner provided by law. It is urged that the assessment was not made by the assessor with the assistance of the township board in accordance with the provisions of act 147 of the Acts of 1919, providing for the taxation and valuation of taxable property in the State as construed in *Hutton* v. *King*, 134 Ark. 463, 205 S. W. 206. The act has been incorporated in Crawford & Moses' Digest, commencing with § 9887. Section 9910 of

Crawford & Moses' Digest, which is § 16 of said act 147, provides for the manner of listing property erroneously left off the tax-roll. The property in question was not assessed by the Surplus Trading Company for the year 1922 and was left off the tax roll. Subsequently the tax assessor was notified of the omission to list the property by the clerk, and placed a value of $100,000 on the personal property of the Surplus Trading Company, and designated the same as delinquent. Under the provisions of the section of the statute last above referred to it was the duty of the assessor to place a value upon property which, for any reason, had been omitted from the tax-roll, and the township board had no duty to perform in the matter.

Again, it is insisted that said act 147 was repealed by act 477 passed by the Legislature of 1919. This act contains twelve sections, and it is only necessary to say that it had nothing whatever to do with the original or primary assessment of property. The only power given is with reference to the equalization of the valuation of all property which has been properly assessed.

Again, it is contended by counsel for appellee that there was an overvaluation placed upon the property of the Surplus Trading Company for the year 1922. The record shows that, on April 21, 1922, the Surplus Trading Company purchased from the United States 87,143 blankets situated on the Camp Pike Military Reservation in Pulaski County, Arkansas, and paid therefor the sum of $138,492.65. These blankets were sold afterwards by the Surplus Trading Company to various persons at a profit. It was the duty of the Surplus Trading Company to assess its property situated in Pulaski County, Arkansas. *Beal-Doyle Dry Goods Co.* v. *Beller,* 105 Ark. 370, 150 S. W. 1033. Not having done so, it became the duty of the assessor to assess the property under the provisions provided for the manner of listing property erroneously left off the tax-roll. The valuation placed upon the property by the assessor was $100,000. If the Surplus Trading Company thought that the assessor had placed

an excessive valuation upon the property, when compared with the value placed upon similar property, it should have pursued the remedy provided for its relief under the statute. Having failed to pursue this remedy, the courts cannot give any relief. *Clay County* v. *Bank of Knobel,* 105 Ark. 450, 151 S. W. 1013, and cases cited. In *State* v. *Little,* 94 Ark. 217, 126 S. W. 713, 29 L. R. A. (N. S.) 721 we quoted with approval from well-known authorities on taxation the following: "The courts, either of common law or equity, are powerless to give relief against the erroneous judgments of assessing bodies, except as they be especially empowered by law to do so."

It was there said that the text quoted is a rule of general application. Under the principles of law above decided, we are of the opinion that the assessment of 1922 must stand, and that the sheriff had a right to institute an action for the collection of the assessment and penalty.

The case with reference to the assessment for 1923 stands on a different footing. The testimony in the case with reference to the ownership of the property is very voluminous, but we are of the opinion that the record plainly shows that the United States sold all the rest of the property belonging to it, situated on the Camp Pike Military Reservation, to an honorary commission appointed by the Governor of the State of Arkansas for the benefit of the Arkansas National Guard, and that said honorary commission appointed the Surplus Trading Company as its agent to sell said property. The title to the property was in said honorary commission, and the Surplus Trading Company was to advance the money necessary for the payment of the purchase price to the United States. After the Surplus Trading Company had been reimbursed for the purchase money advanced by it, it was to receive half of the profits for selling the property and for advancing the purchase price. This is the effect of our decision upon the same state of facts in *Adkins* v. *Kalter,* 171 Ark. 1111, 287 S. W. 388. The assessment was made by the assessor in 1923 on certain moneys

deposited in various banks in the city of Little Rock to the credit of said honorary commission. The assessment was made by the assessor upon the theory that part of the money belonged to the Surplus Trading Company and it had failed to assess the same as required by law. Under the facts stated, as we construe them, this money deposited in the various banks in Little Rock to the credit of the honorary commission did not belong to the Surplus Trading Company at the time the assessment was made. It belonged to the honorary commission, as trustee for the benefit of the Arkansas National Guard, and was, on that account, the property of the State. It is true that the Surplus Trading Company had earned a portion of it by its services in the matter, as above stated, but it did not actually have any right to the money until the honorary commission settled with it and paid it for its services. Until that was done, the case would stand like that of any other agent who had performed services for his principal and had collected money for him, but had not yet been paid for his services. Under this state of the record we have the case of an illegal assessment and not one of excessive valuation or an erroneous assessment. The assessment being absolutely void, the assessor had no right to make it. As we have already seen, the suit was brought by the collector to recover taxes from the Surplus Trading Company, and it was proper for the chancellor to grant all relief, legal or equitable, to which the parties in the lawsuit were entitled. *Fulcher* v. *Dierks Lumber & Coal Co.,* 164 Ark. 261, 261 S. W. 645.

The result of our views is that the chancellor should have held the assessment for the year 1923 to be illegal and void, and properly restrained the sheriff from collecting any amount of taxes from the Surplus Trading Company under it. The chancery court, however, erred in holding that the sheriff and collector was not entitled to recover the taxes for the year 1922 and the penalties provided by the statute, as indicated in the opinion.

Therefore the decree will be reversed, and the cause will be remanded with the directions to allow the sheriff

and collector to recover against the Surplus Trading Company the amount of taxes and penalties for the year 1922. It is so ordered.