ADKINS v. KALTER.

Opinion delivered November 1, 1926.

1. AUCTIONS AND AUCTIONEERS—SALE OF STATE PROPERTY AT AUCTION—TAX.—Where the Governor, through the appointment of an honorary commission, accepted military property granted by the United States, and such acceptance was impliedly ratified by the Legislature in Acts 1923, pp. 229, 656, and Acts 1925, pp. 958, 1072, the property was a valid gift to the State, and the proceeds of sale thereof, which were to be used by the National Guard, were exempt under Const., art. 16, § 5, from the auction tax claimed under Crawford & Moses' Dig., §§ 630, 634.

2. STATES—POWER TO ACQUIRE PROPERTY.—A State may acquire real or personal property by conveyance, gift or otherwise, and sell or dispose of it as it sees fit.

3. STATE—ACCEPTANCE OF GIFT.—While affirmative legislative action would be binding as expressing the intention of the State in accepting or rejecting a gift of property to the State, such action is not essential where the gift was accepted by the Governor, whose duty it was to execute and perform the trust imposed under the terms of the gift, especially where such acceptance was subsequently recognized and impliedly ratified by the Legislature.

4. OFFICERS—LIABILITY FOR PUBLIC FUNDS.—Money collected on the State's behalf by a State officer, under color of office but without authority of law, belongs to the State, and must be accounted for.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

STATEMENT OF FACTS.

Appellant brought this suit in the Pulaski Chancery Court against appellees to recover an amount alleged to be due as a tax upon sale of personal property at auction, in said county. The suit was defended on the ground that the property sold belonged to the State, and that, on this account, the tax was not due. The material facts are practically undisputed, and may be briefly stated as follows:

A certain tract of land in Pulaski County, Arkansas, was purchased by the United States Government from the owners, at some time prior to the year 1922, to use as a United States army cantonment. Numerous buildings were erected on the land, and it was used as a

military encampment and mobilization point of the United States Army after the entrance of the United States in the World war. On the 15th day of May, 1922, the War Department of the United States granted to the State of Arkansas what was called a revocable license to use said buildings. The War Department retained the right to occupy any of the buildings which it might require in connection with the salvaging and disposition of Government property.

The Hon. Thomas C. McRae, then Governor of the State of Arkansas, appointed an honorary commission to take charge of said buildings, and also to accept, for the State of Arkansas, certain personal property from the United States. On the 19th day of May, 1922, the War Department of the United States entered into a written contract with A. D. Cohn, as trustee for said honorary commission, for certain surplus property then at Camp Pike, Pulaski County, Arkansas, and listed on certain inventories attached to the contract. The consideration recited in the contract was the payment of $140,564.29 to the United States in the form of a banker's acceptance, payable on the 19th day of November, 1922, which said banker's acceptance was furnished by the Surplus Trading Company, which was composed of certain nonresident individuals and corporations.

In the agreement between the honorary commission and the Surplus Trading Company, it was agreed that this banker's acceptance should be repaid to the Surplus Trading Company out of the proceeds of the sale of said surplus property. It was understood that the remaining proceeds of the sale of said surplus property should belong to said honorary commission, in trust for the State of Arkansas, for the use of the National Guard. The agreement provided that the Surplus Trading Company should act as the selling agent of said honorary commission in disposing of said property, and it was to receive a certain per cent. in addition to the repayment to them of the banker's acceptance above referred to.

Max Kalter was a member of the Surplus Trading Company, and took out an auctioneer's license under the

provisions of chapter 13 of Crawford & Moses' Digest. Section 630 provides that no person shall exercise the trade or business of a public auctioneer, by selling any goods or other property subject to duty under the law, without a license, to be issued according to the law. Section 634 provides that there shall be levied and paid upon all sales of property at auction, except as hereafter excepted, a tax or duty to the county of one and one-half per cent. on all sales of said property. The record shows that Max Kalter, as auctioneer, sold something over $500,000 of said property, and that, if the tax was due to the county, it was entitled to recover $7,617.84.

The chancellor found that the proceeds of the sale in question belonged to the State, and that no tax, under the provisions of the statute licensing auctioneers and levying a tax upon the sales of personal property at auction, could be recovered in this suit. It was therefore decreed that the complaint should be dismissed for want of equity. The case is here on appeal.

*Poe & Poe* and *J. C. Marshall,* for appellant.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

HART, J., (after stating the facts). It is earnestly insisted by counsel for appellant that the chancellor erred in holding that the property in question belonged to the State and, on that account, was not subject to the auctioneer's tax under the provisions of the statute referred to in our statement of facts. We cannot agree with counsel in this contention. It is well settled that a State may acquire real or personal property by conveyance, gift or otherwise, and sell or dispose of it as it sees fit. 36 Cyc. 869, and 25 R. C. L., p. 388, § 21.

This court has held that, under our Constitution, the power of the State in respect to its property rights is vested in the Legislature. *Little Rock & Fort Smith R. Co.* v. *Howell,* 31 Ark. 119, and *Bartlett* v. *Crawford,* 36 Ark. 637. It does not follow, however, that, because the Legislature has not acted in respect to the property

in question and provided for its disposition, it did not belong to the State.

The record shows that the Governor, acting in behalf of the State, appointed an honorary commission to accept the property in question and to use the proceeds for the National Guard of the State of Arkansas. In *Hawkins* v. *The Governor*, 1 Ark. 570, it was said: "It will be borne in mind that the office of President of the United States and the office of Governor of our State are, in many respects, like each other, with this essential difference, that the former is intrusted with the executive powers that relate exclusively to the General Government, and the latter is intrusted with the exclusive powers that belong to the State Government. The powers conferred and the duties enjoined upon both of these officers by the respective Constitutions of the two Governments are, in most particulars, identically the same, so far, at least, as regards their legal or constitutional discretion."

Article 6, § 6, of our Constitution provides that the Governor shall be commander-in-chief of the military and naval forces of this State, except when they shall be called into the actual service of the United States.

The object of the War Department in granting the surplus property at Camp Pike to the honorary commission appointed by Governor McRae was to provide a fund for the National Guard of Arkansas. It is true that a substantial money consideration was paid to the United States, but this payment was made by the Surplus Trading Company, which was to act as selling agent for the honorary commission in the disposal of the property, and it was to receive back the consideration to be paid the United States, first, from the proceeds of the sale of said property, and the balance was to be paid to said honorary commission, in trust, for the National Guard of the State of Arkansas, after deducting certain selling commissions of said Surplus Trading Company. The property was sold for something over $500,000. The sale was made within a few months after the property was accepted from the United States by the honorary com-

mission, in behalf of the State of Arkansas. Thus it will be seen that, when the transaction is considered in its entirety, it was, in effect, a gift of the property to the State of Arkansas. The gift was accepted by the honorary commission duly appointed by the Governor, and this, in fact, constituted an acceptance by the Governor.

While affirmative legislative action would be binding as expressing the intention of the State, either in accepting or rejecting a gift of property to the State, yet such affirmative action is not essential in order to render a gift of property to the State valid. As we have already seen, the Governor, by virtue of his office, is commander-in-chief of the army and naval forces of the State, and, through an honorary commission appointed for the purpose, accepted the gift. The Arkansas National Guard was an existing volunteer association, organized pursuant to the terms of the statute, at the time the transaction in question took place. Crawford & Moses' Digest, chap. 119. Under § 7173, the Governor is authorized, and it is made his duty, to establish and prescribe such rules, regulations, forms and precedents as he may deem proper and necessary for the organization, regulation, discipline and instruction of the Arkansas National Guard. The section further provides that the Governor shall have full control and authority over all matters touching the Arkansas National Guard, its organization and discipline. Thus, the gift was accepted by a State officer, whose duty it was to execute and perform the trust imposed under the terms of the gift. He was to become a trustee under obligation to expend the fund derived from the sale of the property in accordance with the provisions of the trust.

The Legislature which convened next after the transaction in question passed an act to promote the efficiency of the Arkansas National Guard. Gen. Acts of 1923, p. 229. Under § 5 of the act, it is made the duty of the Governor to appoint, subject to the approval of the Secretary of War, an officer of the Arkansas National Guard, who shall be regarded as the property and dis-

bursing officer of the United States. The section further provides that this officer shall receive and account for all funds and property belonging to the United States in possession of the Arkansas National Guard. It further provides that he shall render to the War Department such account of the funds intrusted to him as may be required by the Treasury Department. The same Legislature made the usual biennial appropriation for the support of the Arkansas National Guard. Gen. Acts of 1923, p. 656.

The Legislature of 1925 also passed an act to promote the efficiency of the Arkansas National Guard, and amended in some respects the act of 1923, above referred to. Gen. Acts 1925, p. 1072. This Legislature also made the biennial appropriation for the support of the Arkansas National Guard. Gen. Acts of 1925, p. 958.

The gift in question was for a public purpose, and was in accordance with the general legislative policy before and since the time of the transaction in question, and its object and purpose was to promote the efficiency of the Arkansas National Guard. The presumption is that, in making the biennial appropriations, the Legislature acquainted itself with the needs and resources of the Arkansas National Guard. Under the circumstances, the Legislature may be said to have, impliedly at least, ratified the act of the Governor in accepting the gift under consideration.

If it can be said that the Governor, by virtue of his office, had no legal right to accept the property, still it must be admitted that he acted at least under color of his office. Money collected by a State officer, under color of office, without authority of law, belongs to the State, and must be accounted for. It is true that the Legislature might have acted in the premises and provided for the disposition of the property or the proceeds of the sale thereof. However, it has not done so, and the Governor, acting at least under color of his office, has accepted the property and caused the proceeds from the sale of it to be applied to the upkeep of the National Guard of

Arkansas, as contemplated by the War Department of the United States when it granted the surplus property at Camp Pike to the State.

It has been held that, where an agent of the State, without authority, sells property of the State and takes a note in payment therefor, the Legislature may ratify his act and enforce the note. *State* v. *Torinus*, 26 Minn. 1, 49 N. W. 259, 37 Am. Rep. 395. The principle announced in this case shows that the property in question belongs to the State, because the Legislature could not ratify the illegal act of the State officer unless the property or its proceeds still remained the property of the State.

Again, in *People* v. *Van Ness*, 79 Cal. 85, 21 Pac. 554, 12 A. S. R. 134, it was held that fees collected without legal authority by the Commissioner of Immigration, in his official capacity and under color of law, belonged to the State, and not to him. In that case it was contended that, the money having been collected by Van Ness without legal sanction, he had the right to retain it as his own. The court held to the contrary, and said that the money, having been collected under color of office, should have been paid into the State Treasury, and did not belong, in any view, to Van Ness, and he had no right to retain it.

In the application of this principle to the case at bar, we are of the opinion that the proceeds of the sale of the surplus property at Camp Pike belong to the State, and on this account were not subject to an auctioneer's sale tax under the statute.

Having reached the conclusion that the property in question belonged to the State by grant from the United States, but little more remains to be said. Under art. 16, § 5, of our Constitution, public property used exclusively for a public purpose is exempt from taxation. While the legal title to the property was in the honorary commission as trustee, the whole beneficial interest was in the State. The term "property," as used in the section of the Constitution just referred to, is broad enough to

cover an equitable interest like the one in question. The exemption from taxation is based upon the use which is made of the property, namely, for the support of the National Guard of the State, and not upon the person in whom stands the legal title.

This principle was recognized in *Grand Lodge of Free and Accepted Masons* v. *Taylor*, 146 Ark. 316, 226 S. W. 129. There the court had under consideration a clause of the same section of the Constitution, which exempts, from taxation property used exclusively for public charity. The court said that the language of the exemption clause refers not to the character of the corporation or association owning the property sought to be exempted, but, regardless of the character of the owners, to the, direction and exclusive use of the property for public charity.

The result of our views is that the holding of the chancellor was correct, and the, decree will therefore be affirmed.