**CITY OF GREENVILLE, MISS., et al. v. MILLER et al.**

No. 603.

District Court, E. D. Arkansas, W. D.

Oct. 28, 1942.

Ohmer C. Burnside, of Lake Village, Ark., and Farish, Keady & Branton, Wynn, Hafter & Lake, Thomas & Cook, Sam C. Cook, and Charles S. Tindall, all of Greenville, Miss., for plaintiffs.

Jack Holt, Atty. Gen., of Arkansas, J. M. Koons, Asst. Atty. Gen., and George Vaughan, all of Little Rock, Ark., for Corporation Commission.

John Baxter, of Dermott, Ark., and Lee Cazort, Jr., of Little Rock, Ark., for County Officials of Chicot County, Ark.

TRIMBLE, District Judge.

This is an action by the plaintiffs, seeking a declaratory judgment against the Arkansas Corporation Commission, and other taxing agencies of the State of Arkansas, and its subdivisions, on the claimed right of the State of Arkansas to tax what is known as the Greenville Bridge, which spans the Mississippi River between the States of Arkansas and Mississippi.

The plaintiff, City of Greenville, Mississippi, hereinafter for brevity referred to as Plaintiff City, is a municipal corporation in the State of Mississippi, and its co-plaintiff, Union Planters National Bank and Trust Company, of Memphis, hereinafter referred to as Plaintiff Trustee, is a national banking corporation, with its place of business at Memphis, Tennessee. The defendants are all residents of the State of Arkansas, and are the members of the Arkansas Corporation Commission, hereinafter referred to collectively as "Commissioners", and County officers of Chicot County, Arkansas, who shall hereinafter be referred to collectively as County Officials. They were all sued in their official capacities and as individuals.

Motions to dismiss the original complaint were filed by all the parties defendant, and to meet these motions plaintiffs filed an amended complaint. To this amended complaint motions to dismiss again were filed. At the hearing of this cause, by stipulation, it was agreed that the original complaint and motions to dismiss would be withdrawn, and the cause tried upon the amended complaint, the motions to dismiss, and oral motions made at the trial and made a part of the record.

During the year 1938 and prior thereto it was desired to construct a bridge across the Mississippi River, a navigable stream, in the vicinity of Plaintiff City, which, upon completion, would become a part of United States Highway No. 82. This highway, after passing through the State of Texas, enters the State of Arkansas, and proceeds in an easterly direction until it reaches the Mississippi River at a point opposite Plaintiff City and in the vicinity of Lake Village, Arkansas, where, prior to the construction of the bridge there was a private ferry operating. After entering the State of Mississippi it again proceeds in an easterly direction and enters the State of Alabama, and thence on east. It is conceded by all parties that this highway is a vital and integral link in the national highway system.

Recognizing the benefits and advantages to be attained by the building of the proposed bridge the Congress of the United States passed an act which was approved on June 14, 1938. Under that act the Plaintiff City accepted the responsibility of

sponsoring the work of construction, financing, maintenance and operation of the bridge. This Act of June 14, 1938, 52 Stat. 681, empowered the Plaintiff City, among other things to do the following:

(a) To construct, maintain and operate said bridge and its approaches.

(b) To enter upon land and to acquire, condemn, occupy, possess and use real estate and other property needed for the location, construction, maintenance and operation of said bridge and its approaches.

(c) To fix and charge tolls for transit thereover, provided that the rates of toll should be so adjusted as to provide a revenue sufficient only to pay the cost of maintaining, repairing and operating said bridge and to provide a sinking fund to amortize the cost thereof, including interest, as soon as possible, but within a period of not to exceed forty years, from completion thereof.

(d) Thereafter, perpetually, to maintain and operate said bridge, free to the public of any toll or charge.

Acting under authority of this Act, as supplemented by Chapter 283 of the General Laws of Mississippi, 1938, Plaintiff City acquired rights-of-way, easements for the purpose of constructing the bridge and its approaches, not only from individuals, but also from the State of Arkansas and its political subdivisions. It also, on or about September 14, 1938, obtained from the Chief Engineer of the United States Army and the Secretary of War, approval of the location and the plans submitted by it for the construction of the bridge across the Mississippi River. It was the intent of the Plaintiff City at all times that this bridge should become a part of United States Highway No. 82, hereinbefore described, and constitute a link in the highway systems of Arkansas, Mississippi and the United States.

The Highway Departments of the States of Arkansas and Mississippi did the preliminary surveying and engineering work for the construction of the bridge. In December, 1938, work was begun upon the bridge. Plaintiff City constructed approaches on the east side of the river connecting the bridge with United States Highway No. 82, and Mississippi State Highway No. 1, running north and south. The State of Arkansas built an approach on the west side, about eight miles long, which connected the bridge with United States Highway No. 82, from the west, and United States Highway No. 65 (the latter highway running north and south), and with the highway system of Arkansas. Acts of the legislatures were passed in both Arkansas and Mississippi authorizing their respective highway departments to maintain said bridge. Since the completion of the bridge in September, 1940, it has, in fact, constituted an integral part of the highway systems of Arkansas and Mississippi, of United States Highway No. 82, and the national highway system, and it has and is now being used as a post road. The United States makes constant use of the bridge, paying the existing tolls therefor, and it is a vital necessity to the military purposes of the United States, for which it has been and is now being used.

The total cost of the bridge, some four million dollars, was paid approximately as follows: The States of Arkansas and Mississippi, made the necessary preliminary survey and investigation at a cost of approximately six thousand dollars; the United States Government (under the provisions of Title II, of the National Industrial Recovery Act, Section 201, 40 U.S.C.A. § 401) contributed $2,100,150; the State of Mississippi contributed approximately $345,000; and the Plaintiff City sold to the Reconstruction Finance Corporation, a corporation wholly owned by the United States, its bridge revenue bonds in the sum of $2,181,000, the major portion of the proceeds of these bonds went to pay for the construction of the bridge. These bonds were issued and sold by Plaintiff City under the powers conferred upon it by the Act of Congress of June 14, 1938, supra, and Chapter 283 of the General Laws of Mississippi, 1938, supra. The repayment of the principal and interest of these bonds was secured as follows: the Plaintiff City executed and delivered to Plaintiff Trustee, a trust indenture, pledging and hypothecating the tolls to be charged for the use of the bridge. As of March 1, 1941, Plaintiff City executed its refunding bonds in the principal amount of $2,181,000, and exchanged for the bonds sold to the Reconstruction Finance Corporation. Plaintiff City secured the payment of principal and interest of the bonds by executing and delivering to Plaintiff Trustee another trust indenture, containing substantially the same provisions relative to security, etc. In each of these trust indentures it was provided that the tolls for the use of the bridge would be so adjusted as to comply with the provisions of the statute, i. e., to provide a fund only

sufficient to pay the cost of maintaining, repairing and operating the bridge and its approaches, and to provide a sinking fund to pay off and discharge the principal amount of the bonds and interest thereon at four per cent, as soon as possible, but not to exceed forty years from September 1, 1940, at which time the bridge was completed. Since completion Plaintiff City has operated the bridge and collected tolls in accordance with the provisions of the statute and trust indentures.

Plaintiff City is without authority to operate the bridge for gain or profit, nor was it constructed and authorized for gain or profit, either for Plaintiff City, the State of Mississippi, or anyone else. The citizens and residents of the Plaintiff City, of the State of Mississippi, or of the State of Arkansas, have no other or greater rights, privileges or immunities in or with relation to the operation of the bridge than those enjoyed by the residents of the United States as a whole. Plaintiff City has at all times and now maintains the status of the bridge as a part of the public highway, of United States Highway No. 82, and an integral part of the highway systems of the States of Arkansas and Mississippi, and of the United States. The Plaintiff City receives no special benefits from the bridge, its maintenance or operation, other than that arising from its use as a part of the public highway by travellers in reaching Plaintiff City. Neither the construction nor use of the bridge is in any wise essential or of assistance to the municipal operations of Plaintiff City, nor does it in any wise contribute directly or indirectly to the support of the government of the Plaintiff City.

Under the terms and provisions of the trust indenture and bonds, the Plaintiff City was not and is not liable or responsible for the payment of the bonds, and has no financial obligation thereunder, but the bond-holders are wholly dependent upon the collection of tolls for the repayment of principal and interest of the bonds.

During the month of October, 1941, defendants, County Officials, gave notice to Plaintiff City of their intent to cause an assessment to be made upon the assessment rolls of Chicot County, Arkansas, for the years 1941 and 1942, of that portion of the bridge which said County Officials claimed lies within the State of Arkansas. In January, 1942, defendants Commissioners gave like notice of their intent to return for assessment for said years 1941 and 1942 that portion of the bridge which they claimed lies within the State of Arkansas.

It is the contention of the plaintiff that the portion of the bridge which lies within the State of Arkansas is not subject to assessment for taxation, and to sustain that contention alleges:

(a) That Congress in the exercise of its powers to regulate commerce among the several states and to establish post roads has unlimited discretion in choosing the means for their exercise, and that by the Act of June 14, 1938, supra, it has designated Plaintiff City as an agency of the United States, and that it is acting as such agency in owning and operating the bridge.

(b) That under the Act Plaintiff City is empowered to collect tolls for specific purposes, as hereinabove set forth, and is without lawful authority to divert said tolls to the payment of taxes that will arise from the proposed assessments by the Defendants.

(c) Under the Constitution of the United States the several states are exempt from taxation by the United States and by each other, and that Plaintiff City in owning and operating the bridge is engaged in the performance of essential governmental functions of the State of Mississippi, and that by the laws of the State of Mississippi, Plaintiff City was invested with the said constitutional immunity of that state.

(d) The portion of the bridge lying within the State of Arkansas is public property, used exclusively for public purposes, and is exempt from taxation as provided by Article 16, Section 5 of the Constitution of Arkansas.

(e) The effort on the part of the defendants to deny to plaintiff such exemption is a denial to said Plaintiff City of the equal protection of the laws of Arkansas, guaranteed to it by the Fourteenth Amendment to the Constitution of the United States.

(f) That to permit the taxation of that portion of the bridge lying within the State of Arkansas would be an impairment of the contract between the State of Arkansas, on the one part, and Plaintiff City and the bond-holders on the other part, to grant and maintain the tax exemption, and the Defendants are without power to impair the obligations of the contract, and their efforts to make an assessment against the bridge lying within the State of Arkansas is in violation of Section X, Article 1 of the Constitution of the United States.

(g) Taxation of that portion of the bridge lying within the State of Arkansas would result in an undue burden on interstate commerce.

Plaintiffs then plead:

"X (a) Plaintiffs show that there exists an actual controversy as to the taxability of said bridge, as hereinabove set forth, between the plaintiffs on the one part, and the Defendants, jointly and severally, on the other part, and that, in view of the reasons and considerations hereinafter stated, Plaintiffs are entitled to a declaratory judgment declaring whether or not that portion of said bridge situated within the State of Arkansas is legally subject to assessment and taxation by any of the Defendants."

There are some other allegations, but in view of the decision herein, it is neither necessary nor proper to insert them here.

The County Officials filed a motion to dismiss upon the ground that this court had no jurisdiction of the subject matter or the parties. The Commissioners filed a motion to dismiss, and a separate answer. Their separate answer was a general denial, and a specific denial of each and every allegation of the complaint. Their motion to dismiss was as follows:

"The Commissioners move the Court to dismiss the complaint filed herein, (1) because plaintiffs have a plain, adequate and speedy remedy in a Chancery Court of the State by way of injunction, and (2) because plaintiffs have a plain, adequate and speedy remedy by way of a hearing before the Corporation Commission, appeal to the Circuit Court, advancement of the case in said Court, appeal from the Circuit Court and the advancement of the case in the Supreme Court and appeal from the Supreme Court."

At a hearing had on the motions to dismiss, on September 23rd, 1942, it was stipulated that in the event the Court should overrule County Officials' motion to dismiss they should refuse to plead further and the court might prepare a final order, as far as the county officials were concerned.

Whereupon the Plaintiffs made the following motion:

"On behalf of the plaintiffs we move for judgment on the pleadings, as they now stand, it being agreeable to the County Officials and to the Corporation Commission that such motion be made at this time in order to raise the issues of law for the final determination by this Court."

Whereupon counsel for defendants said: "Actually what the net result will be is, we are putting in issue all their conclusions of law and we are admitting all their allegations of fact. That is what it comes down to. As a matter of fact all the facts are more or less a matter of record anyway, but they have made a good many allegations of law which we deny."

Article 16 Section 5 of the Constitution of Arkansas of 1874, provides:

"Provided, further, that the following property shall be exempt from taxation: Public property used exclusively for public purposes; * * *."

Is this bridge "Public property used exclusively for public purposes?" If it is, our inquiry is at an end, and the Court need not pass upon any of the other issues in the case. By stipulation the defendants admit the facts and the only contest is upon the law questions involved.

The Mississippi River, over which it was proposed to build this bridge, being a navigable stream, and it being necessary to have a Congressional act authorizing its construction, and fixing the terms under which it should be built, the Act of June 14, 1938, 52 Stat. 681, was passed, Section 1 of that Act states the purposes for its enactment to be:

"* * * That in order to promote interstate commerce, improve the Postal Service, and provide for military and other purposes, the city of Greenville, Mississippi, and Washington County, Mississippi, singly or jointly, be, and are hereby, authorized to construct, maintain, and operate a bridge and approaches thereto across the Mississippi River, * * *".

Section 3 of the Act authorized Plaintiff City to fix tolls for transit over the bridge, and Section 4 provided: "In fixing the rates of toll to be charged for the use of such bridge the same shall be so adjusted as to provide a fund sufficient to pay for the reasonable cost of maintaining, repairing, and operating the bridge and its approaches under economical management, and to provide a sinking fund sufficient to amortize the cost of such bridge and its approaches, including reasonable interest and financing cost, as soon as possible, under reasonable charges, but within a period of not to exceed forty years from the completion thereof. After a sinking fund sufficient for such amortization shall

have been so provided, such bridge shall thereafter be maintained and operated free of tolls. * * *"

Thus we see, at the very outset Congress states the purposes for which the bridge is to be built, and each one enumerated is a "public purpose." And it may be pointed out, also, that in Section four there is provision made for the creation of a "fund sufficient" to pay for (1) the cost of maintaining, (2) repairing, (3) operating, and (4) to provide a fund sufficient to pay for the cost of constructing the bridge, i. e., retire the bonds as they become due and pay the interest, but no provision made for anything over, such as payment of taxes of any kind.

The State of Arkansas took cognizance of the public purpose of such bridges as this, when, in 1939, the legislature of Arkansas enacted Act No. 383, P. 1028 of the Acts of Arkansas, 1939. Section 1 of that Act authorized Arkansas State Highway Commission "to maintain in whole or in part, a highway toll bridge across rivers or waters bordering the State of Arkansas, as a part of the State Highway System." Section 2 of that Act, being the accelerating section, provides: "The urgent need for a bridge or bridges over and across the rivers and waters bordering this State, and the need on the part of the inhabitants of the State of Arkansas for the expenditures of such funds as may be necessary in *the maintenance of such bridge* or bridges, either in whole or in part, makes the enactment of this act into law necessary for the immediate preservation of *public* safety, convenience, and welfare of the inhabitants of this State."

It is true that this Act 383 was passed after the construction of this bridge had been begun, but the bridge had not been completed, and we may and should assume that the legislature was informed of the construction of this bridge, as it spoke of the need of such bridges, and would, most certainly have known what bridges of a like character were in existence, contemplation, or were in course of construction. While there is nothing in the Act itself to show it, and no evidence was adduced at the trial, it would seem to the court under all the admitted circumstances, that this was the very bridge had in contemplation by the legislature when this Act 383 was passed. "The presumption is that in making the biennial appropriations, the Legislature acquainted itself with the needs and resources of the Arkansas National Guard." Adkins v. Kalter, 171 Ark. 1111, 1116, 287 S.W. 388, 390.

In determining whether this bridge is public property used exclusively for public purposes, under the provisions of the Constitution of Arkansas, we need not look to the general law, for the Supreme Court of Arkansas, in a case in point, has passed squarely upon the issue here. In the case of Adkins v. Kalter, 171 Ark. 1111, 287 S. W. 388, 390, that court had before it a case where the title to the property was in the name of an honorary commission for the use and benefit of the State of Arkansas. The plaintiff sought to collect a tax on amounts of sales under a state statute fixing a tax upon such sales, and brought suit to enforce collection. The action was defended upon the ground that, although the title to property was in the honorary commission, the beneficial interest was in the State of Arkansas, and the money derived from said sales was to be used in organizing, equipping, maintaining and training the Arkansas National Guard, a public organization. After detailing the manner in which the National Guard was authorized, organized and maintained, that Court said:

"The gift in question [from the U. S. War Department] was for a public purpose, and was in accordance with the general legislative policy before and since the time of the transaction in question, and its object and purpose was to promote the efficiency of the Arkansas National Guard." Then the Court said:

"In the application of this principle to the case at bar, we are of the opinion that the proceeds of the sale of the surplus property at Camp Pike belong to the state, and on this account were not subject to an auctioneer's sale tax under the statute.

"Having reached the conclusion that the property in question belonged to the state by grant from the United States, but little more remains to be said. Under article 16, § 5, of our Constitution, public property, used exclusively for a public purpose, is exempt from taxation. While the legal title to the property was in the honorary commission as trustee, the whole beneficial interest was in the state. The term 'property,' as used in the section of the Constitution just referred to, is broad enough to cover an equitable interest like the one in question. The exemption from taxation is based upon the use which is made of the property, namely, for the support of the

National Guard of the State, and not upon the person in whom stands the legal title.

"This principle was recognized in Grand Lodge of Free and Accepted Masons v. Taylor, 146 Ark. 316, 226 S.W. 129. There the court had under consideration a clause of the same section of the Constitution which exempts from taxation property used exclusively for public charity. The court said that the language of the exemption clause refers, not to the character of the corporation or association owning the property sought to be exempted, but, regardless of the character of the owners, to the direction and exclusive use of the property for public charity."

The opinion of this court, that the fact that Plaintiff City is an arm of the State of Mississippi and is .exercising governmental functions under, by reason of, and pursuant to authority from that State, is not controlling here, is further borne out by the decisions of the Supreme Court of Arkansas. The same section of the Constitution under discussion here, also exempts from taxation "buildings and grounds and materials used exclusively for public charity." This provision of the Constitution was construed by the Supreme Court of Arkansas, in the case of Grand Lodge Free and Accepted Masons v. Taylor, supra, where it said (Quoting from syllabus): "Whether property is used exclusively for public charity depends not upon the character of the corporation or association owning the property sought to be exempted, but, regardless of the character of the owner, to the direct and exclusive use of the property for public charity." See, also, Brodie v. Fitzgerald, 57 Ark. 445, 22 S.W. 29; Hot Springs School District v. Sisters of Mercy, 84 Ark. 497, 106 S.W. 954; School District of Fort Smith v. Howe, 62 Ark. 481, 37 S.W. 717, and Robinson v. Indiana & Arkansas Lumber Co., 128 Ark. 550, 194 S.W. 870, 3 A.L.R. 1426, and Adkins v. Kalter, supra, 171 Ark. page 1118, 287 S.W. 388.

That this bridge is public property used exclusively for public purposes cannot be doubted, and it comes within the exemptions from taxation prescribed and provided for in Art. 16, § 5 of the Constitution of Arkansas. This appears from all the admitted facts and circumstances, hereinbefore set out. Such as, the purposes declared in the Act of Congress authorizing its construction; it was paid for with public funds; it was recognized by the legislature of Arkansas as public property for public use by the enactment of the Act of 1939 hereinbefore mentioned; the provision in the Act of Congress and the trust indenture, for the bridge being toll free when the tolls have paid off the bonds with interest; the actual use to which the bridge is being put, and the manner of its operation since its completion; the fact that the Plaintiff City has no pecuniary beneficial interest in the tolls collected; the fact that the Plaintiff City has no financial obligation or liability for the repayment of the principal and interest on the bonds, but the bondholders rely and.are dependent wholly upon the collection of tolls for the repay-- ment of their money."

The Court is, therefore, of the opinion that the State of Arkansas is without authority to assess taxes upon that portion of the bridge lying within the State of Arkansas, and so holds.

This holding obviates the necessity of passing upon any of the other questions raised. Findings of fact and conclusions of law having heretofore been made in conformity with this opinion, and a judgment carrying this holding into effect having been entered, nothing further is necessary to give effect to this opinion.